UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JUAN ZAMUDIO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-02035-TWP-MG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

### ORDER DENYING MOTION FOR RELIEF UNDER 28 U.S.C. § 2255

This matter is before the Court on a Motion under 28 U.S.C. 2255 to Vacate, Set Aside, or Correct Sentence filed by Petitioner Juan Zamudio ("Zamudio") (Dkt. 1). In 2024, Zamudio pled guilty to two counts of the Fourth Superseding Indictment: Count One: Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, and Count Eleven: Conspiracy to Launder Monetary Instruments. He is serving a combined 300-month prison sentence. In his petition, Zamudio asks the Court to vacate his guilty plea and sentence pursuant to 28 U.S.C. § 2255. Zamudio also filed two Motions Requesting Status of this case. (Dkts. 38, 39). For the following reasons, his § 2255 motion is **denied**, and the requests for status are **granted**.

### I. THE § 2255 MOTION

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.

§ 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II.  BACKGROUND

### A.  Criminal Conduct

Concerning Count I, when Zamudio pled guilty in April 2020, he admitted to that he assisted his brother, Jose Zamudio, in operating a drug trafficking enterprise. (Crim. Dkt.[1] 1537 at 16:8–19:23). They received pounds of methamphetamine from Mexico and distributed it in Indiana. *Id*. Zamudio participated in the operation by distributing methamphetamine to individuals. On at least one occasion in October 2016, he sold two pounds of methamphetamine outside a grocery store. *Id*. Additionally, in 2015 and 2016, Zamudio conspired to launder the drug proceeds by wiring cash to individuals in Mexico. *Id*. Those funds were used to purchase additional methamphetamine and to pay other expenses of the trafficking operation. *Id*.

Zamudio admitted to the following conduct concerning Count 11:

> Beginning in December of 2015, and continuing throughout 2016, Juan Zamudio also conspired with Jose Zamudio to launder drug proceeds. Specifically, they conspired to knowingly conduct financial transactions with drug proceeds designed to promote the drug trafficking activity. Jose and Juan Zamudio and other co-conspirators utilized InterCambio Express, MoneyGram, and Western Union to wire the drug proceeds from Indiana to Mexico. The wires were sent by Juan Zamudio and others to numerous nominee names provided by the drug trafficking organization in Mexico. When Juan Zamudio sent these wires, which totaled in excess of $7,000, he did so knowing that the cash being wired was drug proceeds. Juan Zamudio conducted these wire transfers with the intent to promote the ongoing drug trafficking activity charged at Count 1 of the indictment in that the wire

---

[1] *United States v. Zamudio*, No. 1:16-cr-00251-TWP-MJD-2.

transfers were required before the Mexican source of supply would send additional amounts of methamphetamine to Jose Zamudio.

**B.     Search of Home**

In November 2016, federal agents searched Zamudio's residence. They found nearly 11 kilograms of pure methamphetamine in the garage. In his vehicle, they found another pound of meth, a scale, and a loaded firearm. When officers arrested him, he had a bullet in his pants pocket. *United States v. Zamudio*, 18 F.4th 557, 559 (7th Cir. 2021).

**C.     Indictments and Charges**

In November 2016, Zamudio was indicted along with 15 codefendants. He was charged only with Count I: Conspiracy to Possess with Intent to Distribute and to Distribute 500 Grams or More of Methamphetamine (mixture) and/or 500 Grams or More of Cocaine (mixture). (Crim. Dkt. 12).

Retained counsel Kevin McShane ("McShane") appeared for Zamudio on November 18, 2016. (Crim. Dkt. 102). In December 2016, a grand jury returned a superseding indictment charging Zamudio and 17 codefendants. (Crim. Dkt. 184). A second superseding indictment followed in March 2017. (Crim. Dkt. 353). Zamudio continued to face only the original charge of conspiring to distribute at least 500 grams of a controlled substance.

On October 23, 2017, retained counsel John T. Tennyson ("Tennyson") replaced McShane as Zamudio's counsel. (Crim. Dkts. 552, 569). Zamudio's filings suggest that McShane was forced to withdraw from the case due to a serious illness. In December 2017, a grand jury returned a third superseding indictment which added three new charges against Zamudio —Count 6: Possession with Intent to Distribute 50 Grams or More of Methamphetamine, Count 7: Illegal Alien in

Possession of Ammunition, and Count 13: Conspiracy to Launder Monetary Instruments. (Crim. Dkt. 595).

On February 12, 2018, Zamudio rejected a plea agreement on the record. (Crim. Dkt. 1535). Under that agreement, Zamudio would have pled guilty to the two conspiracy charges—drug trafficking and money laundering. He would have faced an adjusted offense level of 37 under the U.S. Sentencing Guidelines, *see id.* at 3, and an advisory Guidelines sentencing range of 210–262 months. U.S. Sentencing Commission, *Guidelines Manual*, § 5A (2018 ed.).

**D.     Suppression Motion**

Nine days after Zamudio rejected the plea offer, Tennyson moved to suppress the evidence seized from Zamudio's home. (Crim. Dkt. 745). Tennyson argued principally that the warrant authorizing the search was not based on probable cause to believe there would be evidence of drug trafficking at the residence. More specifically, he argued that the probable cause affidavit offered no evidence that there actually was any connection between the residence and the crimes alleged.

This Court granted the motion to suppress. (Crim. Dkt. 791). The Court found no evidence in the probable cause affidavit supporting an inference that drug trafficking activity took place at Zamudio's home. The Court found the affiant's statement that, in his experience, drug dealers tend to keep drugs where they live insufficient to demonstrate probable cause that evidence of drug trafficking would appear at Zamudio's home.

The Seventh Circuit reversed this Court's decision in an interlocutory ruling on November 20, 2018. *United States v. Zamudio*, 909 F.3d 172 (7th Cir. 2018) (*Zamudio I*). The Court of Appeals found the probable cause affidavit sufficiently demonstrated that Zamudio participated in a drug trafficking operation and he lived in the residence that was searched. That,

combined with the affiant's testimony that, in his experience, drug dealers keep drugs and other evidence of crimes at their homes, supplied probable cause to search the residence. *Id.* at 1176.

**E.     Guilty Plea**

Two months before the Seventh Circuit reversed the suppression order, the government obtained a fourth superseding indictment against Zamudio and eight remaining codefendants. For Zamudio, only the drug trafficking conspiracy charge changed from the third superseding indictment, and the count number for the money laundering count changed. Now, he was charged in Count 1 with conspiring to distribute 50 grams or more of actual methamphetamine and/or 500 grams of a substance containing cocaine, and Count 11 conspiracy to launder monetary instruments. (Crim. Dkt. 999).

On April 8, 2020—four months after the Seventh Circuit's decision—Zamudio petitioned the Court to plead guilty without the benefit of a plea agreement to Counts 1 and 11 and the Government agreed to dismiss the remaining counts. (Crim. Dkt. 1229). The Court accepted Zamudio's plea at a hearing on April 17, 2020. Zamudio admitted to the factual basis set out above and testified under oath that he was guilty, that he discussed his possible defenses and the consequences of his plea with counsel, he was fully satisfied with the advice and representation of his counsel, and that he wished to plead guilty of his own free will. (Crim. Dkt. 1309).

**F.     Sentence**

The Court sentenced Zamudio at a hearing on September 29, 2020. (Crim. Dkt. 1375). Tennyson raised numerous objections to the presentence investigation report ("PSR"). (Crim. Dkt. 1258). Tennyson filed a Sentencing Memorandum (Crim. D. 1263) in which he objected to (1) the lack of a mitigating role adjustment and departure for substantial assistance to the government; (2) only a two-level reduction being applied for acceptance of responsibility; and (3) the inclusion of

the enhancements for possessing a dangerous firearm and maintaining a drug premises. *Id*. ¶¶ 3–17. Tennyson argued that Zamudio's total offense level should be 27 with a Criminal History Category of I, resulting in a sentencing guideline range of 70 to 87 months. Id. ¶ 14. However, the mandatory minimum on Count 1 was 120 months. See 21 U.S.C. § 841(b)(1)(A)(viii). Over the objections, the Court determined that Zamudio's base offense level was 38 based on the quantity of actual methamphetamine involved in the conspiracy and added two-level enhancements for possessing dangerous weapons and maintaining a premises for the purpose of distributing drugs. Factoring in the money laundering charge and a two-level reduction for accepting responsibility, the Court found a final offense level of 42 and an advisory sentencing range of 360 months to life. Zamudio was sentenced to 300 months imprisonment on Count 1 and 240-months' imprisonment on Count 2, to be served concurrently, which reflected a downward variance based on Zamudio's personal history and characteristics. (Crim. D. 1309.)

**G.     Direct Appeal**

Zamudio brought a direct appeal challenging the Court's base offense level determination and its application of the firearm and premises enhancements. The Seventh Circuit affirmed Zamudio's sentence. *United States v. Zamudio*, 18 F.4th 557 (7th Cir. 2021) (*Zamudio II*). The Court of Appeals found that the Court's determinations were supported by ample evidence that Zamudio was aware of the drugs that were found in his garage, that the drug amounts determined by the Court were reasonably foreseeable given his extensive role in the conspiracy, that he possessed the firearm in connection with the drug trafficking offense because it was found in his car near drugs and paraphernalia, and that the premises enhancement applied because he admitted to storing drugs at the residence for months and had them hidden throughout the residence. *Id.*

### III.   ANALYSIS

Zamudio raises a laundry list of attacks on his guilty plea and sentence. All stem from the argument that he was deprived of his Sixth Amendment right to effective assistance from counsel. A § 2255 movant claiming ineffective assistance bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 688–94 (1984); Resnick v. United States, 7 F.4th 611, 619 (7th Cir. 2021).

It is fundamental that the § 2255 movant faces the burden of demonstrating both deficient performance and prejudice. See, e.g., Williams v. United States, 879 F.3d 244, 249 (7th Cir. 2018) ("To demonstrate prejudice, Williams had the burden to show a reasonable probability" of a different outcome "but for the failure by his counsel."). "Only if the petitioner comes forward with 'specific acts or omissions of his counsel that constitute ineffective assistance'" does the Court "consider 'whether these acts or omissions were made outside the wide range of professionally competent assistance.'" Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010) (quoting Berkey v. United States, 31789 F.3d 768, 772 (7th Cir. 2003)).

A guilty plea "cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel." Hurlow v. United States, 726 F.3d 958, 967 (7th Cir. 2013). A petitioner who has pled guilty can establish prejudice only by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). For this reason, "[t]he nature of relief secured by a successful collateral challenge to a guilty plea [is] an opportunity to withdraw the plea and proceed to trial." Padilla v. Kentucky, 559 U.S. 356, 372–73 (2010).

Zamudio's sworn testimony is critical to this inquiry. "[R]epresentations made to a court during a plea colloquy are presumed to be true." Hurlow, 726 F.3d at 968 (citation and internal

quotation marks omitted). "Defendants cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity." *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008). Thus, statements to the Court are given a "strong presumption of verity," *United States v. Silva*, 122 F.3d 412, 415 (7th Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)), because "when the judge credits the defendant's statements in open court, the game is over," *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). "[A] defendant has no chance of success on appeal when the judge elects to treat freely given sworn statements as conclusive. Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *Id.*

A.  **McShane's Communication of and Advice on Plea Offer**

Zamudio asserts that McShane verbally conveyed a plea offer early in the case but advised him to reject it. Zamudio emphasizes that McShane never presented the proposed agreement to him in writing. (Dkt. 8 at 2). To the extent Zamudio argues that this alone requires the Court to find ineffective assistance and vacate his guilty plea, he is incorrect.

It is true that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). The Court is aware of no authority, however, holding that counsel breaches that duty and violates the Sixth Amendment by communicating a plea offer orally rather than in writing.[2] Moreover, Zamudio fails to explain why he would have accepted the

---

[2] *See Overstreet v. Wilson*, 686 F.3d 404, 406–07 (7th Cir. 2012) ("Overstreet's lawyers did relay the offer to him, and he turned it down. He contends, however, that the communication was not effective because he was having a psychotic 'break' at the time and could not appreciate the offer's significance. *Frye* does not consider whether counsel furnish ineffective assistance by failing to convey a plea offer 'effectively'; we assume without deciding that counsel must do so. Similarly, *Frye* does not discuss the proper treatment of oral offers (the Court stressed that the offer to *Frye* was a writing that contained all material terms); we assume, again without deciding, that counsel's duty to communicate potential bargains to their clients covers oral offers before they are term-complete.").

8

offer had McShane presented it in writing. *See Frye*, 566 U.S. at 148 ("[W]here a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer," *Strickland* "requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed."). Because Zamudio does not allege that McShane failed to convey an offer or that he would have accepted that offer if it was presented in a different form, he has no claim under *Frye*.

Zamudio argues in his reply that McShane could not have properly advised him to reject this plea offer because he had not yet investigated all the material facts. Once any plea offer was made, Zamudio had "the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). But, as the Court explains below, Zamudio asks the Court to find that his attorneys failed to investigate facts that would not have helped his case. Moreover, he does not specifically state where McShane's advice regarding this plea offer fell short or what advice would have prompted him to accept the offer.

**B.** **Counsel's Failure to Secure a Favorable Plea Agreement**

Zamudio next faults both of his attorneys for failing to negotiate a more favorable plea agreement. This is not a basis for relief.

Every representation that ends without a favorable plea agreement is not constitutionally ineffective. Plea bargaining "involves factors beyond the control of counsel," including "the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000); *see also Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017) (Counsel "cannot be faulted for the government's decision not to reward an

9

uncooperative defendant with a plea agreement. The government is not required to offer any defendant such an agreement.").

If the government made a plea offer, Zamudio's attorneys were obligated to communicate it to him. *Frye*, 556 U.S. at 145. And, if an offer was made, Zamudio had "the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. But he does not allege that his attorneys failed in either respect, and he had no affirmative right to receive a favorable plea offer.

Zamudio also argues that Tennyson failed to pursue a plea agreement while the Court's suppression order was on appeal, instead devoting his time and efforts to other clients. (Dkt. 1 at 7). Again, though, he offers no evidence that a plea offer was ever available. Tennyson could not violate Mr. Zamudio's Sixth Amendment rights by failing to shake loose a favorable plea agreement from an unwilling prosecutor.

**C.      Failure to Investigate Arguably Favorable Facts**

Zamudio argues that his attorneys deprived him of effective assistance because he informed them of certain facts he perceived as favorable to his defense, but his attorneys failed to investigate and corroborate them. These factual assertions include:

- He did not know about the firearm in his truck, and his fingerprints would not appear on it.

- His brother also drove the truck and had driven it most recently.

- He and his brother often shared clothing.

- His brother had recently worn the pair of pants he was wearing (and which had ammunition in the pocket) when he was arrested.

- His fingerprints and DNA would not appear on any drugs found in the garage.

- No drugs or drug money were in the house.

- He carried out the money transfers at his brother's direction.

- The manner in which that money was transferred was common and not necessarily for unlawful purposes.

(*See* Dkt. 8 at 2–4). Zamudio's argument that his attorneys failed to investigate these factual leads does not help him in his § 2255 case for three reasons.

First, to the extent Zamudio seeks relief from his guilty plea, he is bound now by the facts he swore were true at his change-of-plea hearing. *Hurlow*, 726 F.3d at 968. Those admissions include that the government would have been able to prove at trial that he assisted his brother in drug trafficking and that they conspired to launder the drug proceeds. He cannot obtain relief now by claiming that he would have proceeded to trial or obtained a favorable plea agreement had his lawyers only found the evidence showing that he did not engage in drug trafficking or conspire to launder money.[3]

Second, to the extent Zamudio argues that investigating these factual leads would have yielded a shorter sentence, the Seventh Circuit considered and rejected those arguments on direct appeal. *See Zamudio II*, 18 F.4th at 560–61 (discussing drug quantities),[4] 562 (discussing firearm enhancement),[5] 563 (discussing premises enhancement).[6]

---

[3] Relatedly, Zamudio appears to argue that it is implausible to believe he was involved in a criminal enterprise because he and his wife saved tips from their jobs in a jar in their house, an act which would be unnecessary if he was engaged in a lucrative drug conspiracy. (Dkt. 1 at 9). The fact remains that Zamudio pled guilty to conspiring to traffic drugs and launder money and admitted to doing both.

[4] "[T]he district court found that Zamudio admitted to agents that he allowed his brother to store meth in the garage. This finding was supported by Zamudio's earlier proffer to the government in which he acknowledged that his garage had been used to store drugs for several months . . . . Zamudio points to no evidence showing that he was unaware of the meth in his garage. . . . Although he asserts that there was no evidence showing that the meth found in his garage was 'involved in the conspiracy,' . . . the district court found that Zamudio allowed his brother, 'the leader of the conspiracy,' to store those drugs in the garage."

[5] "Zamudio also asserts that his brother stored the firearm along with the methamphetamine inside Zamudio's vehicle without his knowledge . . . . Even accepting Zamudio's assertion, his argument still fails because the district court could properly determine that he actually or constructively possessed a gun found in his car."

[6] "The district court applied the [premises] enhancement after finding that Zamudio acknowledged, in his earlier proffer to the government, that meth had been stored in his garage for two to three months before he was arrested. The agent also testified at sentencing that bundles of meth were found hidden throughout Zamudio's garage, including in the stuffing of a dog bed stored in a dryer, in an opening in the wall, in the garage door opener's compartment, and in

Third, and more broadly, "an attorney need not investigate every possible factual scenario. Instead, the Constitution requires an attorney to make a 'reasonable' investigation." *Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 691). If the petitioner can demonstrate that counsel's investigation was unreasonable, the focus turns to "what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result." *U.S. ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987). Zamudio has not carried his burden of demonstrating that his attorneys' failure to dig into the evidentiary leads he provided would have produced a different result.

### D.     McShane's Illness and *United States v. Cronic*

Zamudio contends that McShane violated his right to effective assistance when he became ill and, at least by Zamudio's assessment, stopped working on the case at all. Zamudio relies on *United States v. Cronic*, in which the Supreme Court held that the Sixth Amendment is violated (and no specific showing of prejudice is necessary) if counsel is "totally absent," is "prevented from assisting the accused during a critical stage of the proceeding," or entirely fails to subject the prosecution's case to meaningful adversarial testing." (Dkt. 8 at 13); *Cronic*, 466 U.S. 648, 659 n.25 (1984).

Assuming for the sake of argument that McShane became completely incapacitated and performed no work on Zamudio's case for a period of time, Zamudio still has not carried his burden of demonstrating a deprivation on the level of *Cronic*. The question before the Court is not whether McShane *provided* effective assistance, but whether Zamudio *received* effective assistance—and, on that point, it is critical to remember that he was represented by two attorneys.

---

a box of potato chips. . . . [E]ven storage of large amounts of drugs alone can justify application of the drug premises enhancement."

"Where, as here, the defendant was represented by multiple attorneys, an ineffective assistance challenge is particularly difficult to mount." *United States v. Dunfee*, 821 F.3d 120, 128 (1st Cir. 2016); *see also Stoia v. United States*, 109 F.3d 392, 398 (7th Cir. 1997) ("[W]here a defendant is adequately represented by several lawyers and the defendant's overall representation is not impaired by any actual conflict, we will not reverse a defendant's conviction based upon ineffective assistance of counsel."); *United States v. Lloyd*, 983 F. Supp. 738, 743 (N.D. Ill. 1997), *aff'd in part*, 191 F.3d 456 (7th Cir. 1999) ("[E]ven if Bailey's trial prowess arguably fell below the level which Strickland requires, Kenneth Fishman's ability to monitor and correct any of Bailey's mistakes makes Mario's case a tougher one to make.").

Zamudio alleges specifically that McShane failed to investigate certain factual issues and negotiate a favorable plea agreement, but the Court has dismissed those arguments above. Otherwise, Zamudio does not identify any action that McShane failed to take while ill that was not or could not have been completed after Tennyson took over the case. Zamudio's argument that he went without an attorney for a long time is not supported by the record. McShane only withdrew his appearance form the case after Tennyson had entered his appearance, showing there was no lapse in representation. (*See* Crim. Dkt. 563). Viewing the case as a whole, Zamudio was not deprived of his Sixth Amendment right to effective assistance because one of his two attorneys was temporarily unavailable.

E.    **Defense of Suppression Order on Appeal**

Zamudio argues that Tennyson provided ineffective assistance in defending this Court's suppression order on appeal. To establish ineffective assistance by appellate counsel, a § 2255 movant must demonstrate that appellate counsel failed to raise "significant and obvious"

13

issues that were "clearly stronger" than the issues actually raised on appeal. *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013). Zamudio does not satisfy this standard.

This Court granted Zamudio's suppression motion because it found that the officer seeking the search warrant established only that there was probable cause to believe Zamudio was involved in drug trafficking and that, in his experience, drug dealers kept evidence of their crimes at their homes—not that there was evidence Zamudio's home had been the site of any drug activity or that there was any particularized reason to believe there would be evidence of criminality at the residence. Crim. Dkt. 791. The Seventh Circuit disagreed on a pure question of law, finding that the officer's observations about Zamudio's conduct and his own experience justified a warrant without more evidence. *Zamudio I*, 909 F.3d 172.

Zamudio argues that the swearing officer's statements about behaviors of drug dealers based on his own experience and training were incorrect—or at least that they were not consistent with Zamudio's behaviors. (Dkt. 8 at 14–15). He faults Tennyson for not challenging the truthfulness of those statements, but he does not explain how Tennyson should have demonstrated to this Court or the Court of Appeals that the officer's statements about his own experience and training were untrue. Zamudio also argues that, although extensive evidence of criminality was uncovered during the search, it was limited to the garage and vehicle, not inside the "residence."

Defense counsel may challenge the truthfulness of an officer's statements to obtain a warrant, but not on the grounds Zamudio asserts. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* Tennyson could not have succeeded in this Court or the

14

Court of Appeals asserting baldly that the officer's statements about his own experience were incorrect. Likewise, he has failed to explain how Tennyson could have prevailed by arguing that the fact that, although officers ultimately found incriminating evidence, it was not in the exact locations the officer predicted. More fundamentally, Tennyson's representation did not become constitutionally ineffective simply because the Seventh Circuit answered a question of law differently than this Court.

Finally, Zamudio contends that the officer mixed up his name and his brother's name at various points in the affidavit and that Tennyson failed him by not pressing this point at the Court of Appeals. (Dkt. 8 at 15–16). But the Seventh Circuit considered this issue and resolved it against Zamudio:

> Indeed, despite the occasional name switching, there was no confusion as to materially outcome-determinative facts: Zamudio participated in the drug-trafficking conspiracy; he lived at 64 N. Tremont Street; and, based on Agent Bates's training and experience, drug traffickers store drug-related items at their residences. This was enough to create a fair probability that Zamudio's home contained evidence of a crime.

*Zamudio I*, 909 F.3d at 177. The Seventh Circuit rejected the argument Zamudio makes now; he cannot have been prejudiced by Tennyson's failure to raise the argument or to raise it more strenuously.

### F.    Challenges to Sentencing Enhancements

Zamudio argues that Tennyson rendered ineffective assistance when he failed to raise certain arguments against the sentencing enhancements, including that the gun was found in a vehicle, not the house or garage, and not in the same location as the drugs. This argument, of course, ignores the pound of methamphetamine seized from the vehicle along with the gun. (*Zamudio II*, 18 F.4th at 559). Regardless, the Court of Appeals considered these and other facts on direct appeal and found that they did not negate the relevant enhancements. (*Zamudio II*, 18

F.4th at 561–63). "Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

### G. Guilty Plea

Zamudio argues that Tennyson "never informed" him that "if he were to plead guilty that he would be forfeiting any and all challenges to police or prosecutor conduct occurring prior to the plea being accepted by the court." Dkt. 8 at 18. It is not clear what if any claims Zamudio believes have been barred by his guilty plea, much less how failing to advise him properly in that respect deprived him of his right to effective assistance in his criminal case. "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017).

Zamudio implies that Tennyson failed to review the presentence investigation report with him before he pled guilty. (Dkt. 8 at 18). However, the PSR was not prepared until more than a month after Zamudio entered his plea—so reading the PSR with him ahead of time would have been an impossibility. Crim. (Dkts. 1236, 1247).

Finally, Zamudio implies that Tennyson failed to thoroughly advise him regarding the consequences of pleading guilty. However, he testified in open court that he reviewed his charges, the government's evidence, and his defenses with Zamudio, that he understood the various consequences of pleading guilty, and that he wished to do so. Crim. Dkt. 1537. He is now bound by those statements. *Hurlow*, 726 F.3d at 968.

### H. Amendment 821

In his reply brief, Zamudio asks the Court to reduce his sentence based on an amendment to the U.S. Sentencing Guidelines adopted after he filed his petition. Zamudio must raise this request by a separate motion to reduce his sentence.

I.  **Motions Requesting Status**

Zamudio respectfully filed two requests for an update on the status of his § 2255 motion, and requested an updated copy of the docket sheet. (Dkts. 38, 39). These motions are **granted** to the extent the Court has issued this ruling. Additionally, the **clerk is directed** to include a copy of the public docket sheet with this order.

IV.  **CONCLUSION**

For the reasons explained in this Order, Petitioner Juan Zamudio's 28 U.S.C. § 2255 motion is **DENIED**. This action is **dismissed with prejudice**. The **CLERK IS DIRECTED** to enter **final judgment** in this case, to docket a copy of this order in the criminal case, no. 1:16-cr-00251-TWP-MJD-2, and to **TERMINATE** the pending § 2255 motion in that case, Dkt. [1513].

Zamudio's motions seeking updates on this case, Dkts. [38] and [39], are **GRANTED and** the **clerk is DIRECTED** to include a copy of the public docket sheet with this order.

V.  **DENIAL OF CERTIFICATE OF APPEALABILITY**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Zamudio has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 3/3/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

JUAN ZAMUDIO
15484-028
LEXINGTON – FMC
LEXINGTON FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 14500
LEXINGTON, KY 40512

Jordan Oliver
Barnes & Thornburg LLP
joliver@btlaw.com

Brian L. Reitz
DOJ-USAO
brian.reitz@usdoj.gov